# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALISON PALMER *et al.*,<br>    Plaintiffs,<br><br>        v.<br><br>CONDOLEEZZA RICE,<br>    Defendant. | Civil Action No. 76-1439 (HHK/JMF) |

| | |
|---|---|
| MARGUERITE COOPER *et al.*,<br>    Plaintiffs,<br><br>        v.<br><br>CONDOLEEZZA RICE,<br>    Defendant. | Civil Action No. 77-2006 (HHK/JMF) |

## MEMORANDUM OPINION

This case was referred to me by Judge Kennedy for a Report and Recommendation or determination of various motions. Most of these motions relate to whether plaintiffs can seek certain discovery regarding the design and implementation of the Foreign Service Written Examination by the Department of State. Upon consideration of the motions, oppositions, replies, and the entire record, <u>Defendant's Motion for a Protective Order</u> ("Def.'s Mot.") [#570] is denied as moot;[1] <u>Plaintiffs' Motion for Discovery Pursuant to Rule 56(f) and to Stay the Time for Responding to Defendant's Motion to Terminate the Requirements in the 1996 Global</u>

---

[1] Plaintiffs withdrew the discovery requests that were the subject of this motion and replaced them with new discovery requests, which are the subject of defendant's renewed motion for a protective order. Although defendant's initial motion for a protective order is denied as moot, the court did consider the arguments made in that motion, as well as all of the related pleadings, when ruling on other motions discussed in this Opinion. Indeed, these arguments were incorporated by reference into later pleadings.

Consent Decree Regarding the Foreign Service Written Examination Until Discovery Is Complete ("Pls.' Mot.") [#591] is granted; Defendant's Renewed Motion for a Protective Order Regarding June 4, 2004 Discovery on Examination Issues ("Def.'s Renewed Mot.") [#597] is denied; and Defendant's Motion to Terminate the Requirements in the 1996 Global Consent Decree Regarding the Foreign Service Written Examination ("Mot. to Term.") [#582] is denied without prejudice pending further discovery and may be renewed once discovery is complete.

I. BACKGROUND

    A. The Lawsuit

In 1976, plaintiffs brought this lawsuit on behalf of a class of female Foreign Service Officers ("FSOs") and female applicants to become FSOs. They alleged that the Department of State ("State") had discriminated against women in their opportunities for hire as FSOs and in their employment opportunities once hired, in violation of Title VII of the Civil Rights Act of 1964. Some of plaintiffs' claims have been resolved by Consent Decrees, while others have been litigated. The pending motions focus on plaintiffs' claims regarding the administration of the Foreign Service Written Examinations ("FSWEs" or "Examinations") beginning in the mid-1990s.

    B. The 1989 Order

On January 19, 1989, this court found that defendant's use of the 1985, 1986, and 1987 FWSEs had an adverse impact on women, was not justified by business necessity, and violated Title VII and a 1983 Consent Decree that had been negotiated by the parties and approved by the court. Order, Jan. 19, 1989, as amended by Order, Mar. 22, 1989 ("Order") at 1. The court then enjoined defendant from administering Examinations in such a manner that they had an adverse

impact, defined as a discrepancy in male and female pass rates of 1.96 or more standard deviations. Id. at 4.  The court then authorized State to use a certain scoring methodology for the 1988 Examination, and if the government intended to use a different methodology, State had to submit it for court approval.  Indeed, the court ordered defendant to "submit for [c]ourt approval a method for scoring future examinations until a new, non-discriminatory examination is designed and implemented." Id.

      C.      **The Global Consent Decree**

On January 29, 1996, the court approved a Global Consent Decree ("GCD" or "Decree") that had been negotiated by the parties to "resolve[] any and all claims . . . regarding employment discrimination on the basis of sex by the defendant from February 4, 1976, through December 31, 1994, as to any promotions from grade 3 to grade 2, Superior Honor Awards, the Foreign Service examination, stretch and downstretch, out-of cone to consular, program direction, Deputy Chief of Mission assignments, and potential ratings in evaluations." GCD at 4-5.  Notwithstanding this agreement, plaintiffs specifically reserved the right to claim, *inter alia*: (1) discrimination in the FSWE beginning in 1991, and (2) discrimination after December 31, 1994. Id. at 5-6.

Under a section entitled "Prospective Relief," the GCD prohibits State from discriminating against female applicants for junior level Foreign Service career candidate positions, including discrimination in Examinations and other selection procedures.  Id. at 10.

The GCD also contains a section entitled "Reporting and Inspection of Records."  Within this section, the GCD set out the requirement that defendant submit reports to the court and plaintiffs on July 31, 1996 and July 31, 1997.  These reports covered the periods from January 1, 1996 through June 30, 1996 and July 1, 1996 through June 30, 1997, respectively.  The reports

had to include various information, including data about any Examinations administered within the relevant time periods. Aside from these reports, defendant was not required to file any other "reports" with the court. Nothing in the GCD states that these reporting requirements prevented plaintiffs from seeking additional information as they saw fit.

However, the GCD also placed certain requirements on plaintiffs. For example, on or before October 31 of each reporting year (or no later than 90 days after State submitted the relevant report to the court), plaintiffs' counsel had to notify defendant's counsel of whether plaintiffs believed State was in compliance with the Decree during the preceding reporting period. Id. at 39. Plaintiffs' counsel had the option of stating that they needed further information to determine whether State was in compliance. Id. If they chose to request such information, plaintiffs had 90 days after receipt of the data to determine whether they believed State was in compliance with the Decree for the preceding year. If plaintiffs failed to contact defendant's counsel within this time frame, State would be deemed to be in compliance with the Decree.

Finally, the Decree stated that the court retained jurisdiction to enforce the Decree or order "such further relief as may be necessary to effectuate the purposes of the Decree." Id. at 40. It also established automatic termination dates for the injunction and reporting requirements as they related to certain categories of information, but not as they related to the FSWE, Special Honor Awards, and potential ratings in performance appraisals. The injunctions regarding the awards and ratings have been terminated upon motion by the defendant. The injunction regarding the Examination, however, remains in effect.

### D. The Motion to Terminate the GCD's Requirements Regarding the FSWEs

On January 23, 2004, pursuant to paragraph VII.E. of the GCD, State moved to terminate the GCD's injunction and reporting requirements regarding the FSWE on the grounds that State was in full compliance with all GCD provisions relating to the Examination. Mot. to Term. at 1. Defendant argues that the only remaining issue in the litigation relates to the Examination and plaintiffs' contention that the 1996 Examination had a disparate impact on women and thus discriminated against women in violation of Title VII. Defendant also contends that, once this issue is resolved, this 29-year-case will come to an end.

Defendant argues that, beginning in 1991, it designed and implemented a new, non-discriminatory Examination. The parties entered into a Consent Decree regarding the 1991-1994 FSWEs, which was approved by the court on September 19, 2002. Before agreeing to the 2002 Consent Decree, the parties had litigated many of the issues contained therein. According to defendant, at approximately the same time, the parties negotiated the 1996 GCD. As part of the 1996 GCD, the parties agreed to a monitoring and reporting mechanism, covering the period of January 1, 1996 through June 30, 1997. During this period, the Examination was administered once, in November 1996. On August 4, 1997, defendant filed its report indicating how many men and women took and passed the exam.

On October 30, 1997, plaintiffs' counsel sent a letter indicating that they believed that State continued to be in violation of the injunction prohibiting discrimination on the Examination. Plaintiffs did not request additional information about the Examination at that time.

However, defendant insists that the 1996 FSWE was not discriminatory in violation of Title VII. State also explains that plaintiffs have only challenged the job knowledge portion–not

other sections such as English Expression or Biographic Inventory–of the FSWE as discriminatory. Nor have plaintiffs challenged any other aspect of the hiring process.

Defendant further argues as follows. In order to demonstrate a violation of Title VII, plaintiffs can establish that the FSWE had a disparate impact. Plaintiffs can make out a prima facie case by showing that the use of the 1996 Examination caused a hiring pattern with a significantly discriminatory impact. If they do, the burden shifts to defendant to show that the practice was job-related and consistent with business necessity. The burden then shifts back to plaintiffs to show that alternative selection practices would meet the employer's legitimate needs with less disparate impact. According to defendant, plaintiff cannot make out a prima facie case as to the 1996 Examination, and even if they can, the 1996 FSWE was job-related and properly validated.

## II.     PENDING ISSUES TO BE RESOLVED

### A.     Information Sought in Discovery

Plaintiffs' First Set of Interrogatories and Document Requests sought information regarding Examinations administered for each year beginning in 1995 and all documents identified in response to the interrogatories. Plaintiffs later withdrew these requests because defendant attached many of the requested documents to its motion to terminate the GCD requirements. Plaintiffs then served a second set of interrogatories and document requests. The pending discovery requests seek all FSWEs administered after 1996 and additional information about these Examinations. According to plaintiffs, these discovery requests are more limited and focus "solely on determining the methodology by which defendant validated the FSWEs after 1996." <u>Plaintiffs' Opposition to Defendant's Renewed Motion for a Protective Order Regarding</u>

June 4, 2004 Discovery on Examination Issues ("Pls.' Opp. to Def.'s Renewed Mot.") at 4.

In addition to discovery requests that have been served on defendant, plaintiffs also seek discovery, under Rule 56(f), so that they may adequately respond to defendant's motion to terminate the 1996 GCD requirements. At a minimum, such information includes data regarding the 1996 Examination, although it appears that plaintiffs have received much of this information already. It might also include information regarding later FSWEs so that plaintiffs can rebut defendant's argument that the 1996 FSWE is the only live issue in the litigation.

It appears that some of the discovery sought in plaintiffs' discovery requests and the information sought pursuant to Rule 56(f) overlap, but they are not coextensive. Plaintiffs' discovery requests seek information relating to post-1996 Examinations whereas, under Rule 56(f), plaintiffs seek information from 1996 on. While it seems that plaintiffs are satisfied with the information they have regarding the 1996 FSWE, the court will examine whether plaintiffs are entitled to all of the information they seek.

**B.      Defendant's Arguments**

In its motion for a protective order and renewed motion for a protective order, defendant seeks an order from the court stating that plaintiffs are not entitled to discovery at this late stage in the litigation. Defendant argues that the purpose of the 1996 GCD was to end this 29- year-old litigation. It also argues that, as indicated by its name, the *Global* Consent Decree: (1) describes and limits any information to which plaintiffs are entitled, and (2) controls all further proceedings in this case. Defendant also contends that, because plaintiffs are not attempting to modify the GCD, any information to which they are entitled in order to monitor the injunction must be determined by reference to the GCD. Defendant also takes issue with plaintiffs' contention that

7

they are entitled to the discovery they seek because of the general injunctions included in the GCD. According to defendant, this general injunction does not even contemplate–let alone authorize–discovery.

Defendant further explains that plaintiffs specifically reserved the right to claim discrimination in the FSWE beginning in 1991 because, at the time, the parties were litigating whether the Examinations were job-related. As for plaintiffs' reservation of the right to claim discrimination after December 31, 1994, defendant states that plaintiffs may bring a new civil action, but cannot continue to make such claims as a part of this lawsuit.

Defendant goes on to state that they have met all of their reporting requirements under the GCD. As for Examinations administered after 1996, they are not included in the GCD's reporting requirements, but defendant reported on the 1998 FSWE in a demonstration of good faith. Because the court has explicit jurisdiction to enforce the provisions of the GCD, defendant seeks an order from the court stating that plaintiffs' are not entitled to responses to their interrogatories and document requests.

As to information sought under Rule 56(f), defendant argues that it has provided plaintiffs with all of the information they requested about the 1996 FSWE, which is the subject of their motion to terminate.

    C.    **Plaintiffs' Arguments**

Plaintiffs argue that the GCD did not conclude all outstanding claims because it specifically excluded "claims of discrimination based on the FSWE beginning in 1991 and all discrimination after 1994." <u>Plaintiffs' Memorandum in Opposition to Defendant's Motion for Protective Order</u> ("Pl.'s Opp'n") at 5 (citing the GCD). The GCD contains no termination

provision regarding this injunction. In addition, the court's 1989 Order not only enjoins defendant from administering discriminatory FSWEs, it also defines an adverse impact as occurring when there are greater than 1.96 standard deviations between the pass rates of men and women taking the Examinations. Thus, plaintiffs seek information regarding the post-1996 Examinations to determine whether State is complying with the injunctions established in the GCD and 1989 Order.

According to plaintiffs, the GCD does not limit plaintiffs' rights to discovery. It *requires* defendant to produce certain information, but does not *restrict* plaintiffs' right to additional discovery. In addition, under Federal Rule of Civil Procedure ("Rule") 26, plaintiffs are entitled to the requested discovery because it is relevant to plaintiffs' original complaint and their claims of discrimination in the administration of the FSWE after 1994. Plaintiffs also cite two cases, Roman v. Korson, 89 F. Supp. 2d 899 (W.D. Mich. 2000) and Motley v. Yeldell, 664 F. Supp. 557 (D.D.C. 1987), in which plaintiffs were allowed to conduct post-judgment discovery concerning defendants' failure to comply with injunctive relief.[2] In this case, without further discovery, plaintiffs will not be able to determine whether the government has complied with the court's injunctions.

Finally, regardless of plaintiffs' entitlement to post-judgment discovery in the generic sense, plaintiffs argue that they need this information in order to respond to Defendant's Motion to Terminate the Requirements in the 1996 Global Consent Decree Regarding the Foreign

---

[2] Defendant argues that Roman is distinguishable because plaintiffs sought discovery in connection with their motion for post-judgment relief. Furthermore, in Motley, the court did not explain why discovery might have been permitted. Plaintiffs simply infer that discovery occurred because an attorneys' fee petition included an itemization for discovery work.

9

Service Written Examination. Plaintiffs attach an affidavit in which plaintiffs' counsel attests that: (1) they cannot determine whether there was an adverse impact in the post-1996 Examinations unless they have the pass rates of men and women for these Examinations; and (2) if there is an adverse impact, defendant may attempt to show that it validated the job-knowledge portion of the FSWEs, and in that case, plaintiffs need the same information defendant submitted in support of validation of the 1996 Examination, including various statements and documents outlined in the affidavit. Plaintiffs state that it is their "position that the Global Consent Decree cannot be terminated unless defendant can show that *all* written examinations after 1994 as to which there is an adverse impact have been validated." Pls.' Mot., Ex. 1, at 3.

### III.   ANALYSIS

Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

Although Rule 56(f) applies to motions for summary judgment, defendant's motion to terminate is similar to a summary judgment motion because it asks the court for a final adjudication on whether the GCD has terminated based on evidence submitted to the court.

As indicated above, defendant argues that the court should terminate the GCD's injunction and reporting requirements regarding the FSWE on the grounds that State is in full compliance with all GCD provisions relating to the Examination. Mot. to Term. at 1. Defendant

argues that the only remaining issue in the litigation relates to the Examination and plaintiffs' contention that the 1996 Examination had a disparate impact on women and thus discriminated against women in violation of Title VII. Because defendant sees the 1996 Examination as the only remaining issue in the litigation, and because it insists that the 1996 FSWE was not discriminatory in violation of Title VII, it believes that the case can come to an end if the motion is decided in its favor.

      However, in stating that the 1996 FSWE is the only issue left for litigation and in arguing that no further discovery is warranted, defendant makes leaps of logic with which the court cannot agree. Although the GCD contained reporting requirements for only two years, 1996 and 1997, it: (1) did not state that these reports would take the place of any other discovery sought by plaintiffs, and (2) did not state that plaintiffs could not claim discrimination in the Examinations for any subsequent years. Indeed, the GCD specifically authorizes plaintiffs to seek additional information regarding any exams administered during the reporting periods in order to determine whether they will challenge the exams, as long as they request the information within a certain time period. Although plaintiffs did not request more information regarding the 1996 Examination by the GCD deadline, they did timely indicate that they believed State was not in compliance with the GCD, and therefore the issue of whether the 1996 FSWE conformed to Title VII's requirements is a live one. Indeed, plaintiffs may be entitled to more information regarding the 1996 Examination because it appears that the time restraint applied only to information plaintiffs had to request to determine whether they would challenge the FSWE, not information they would request after they decided to challenge it. In addition, the GCD did not state that plaintiffs had to challenge or request information by a date certain for any exams administered

*after* the reporting periods described above. In fact, without imposing any time limits for making such claims, the GCD specifically reserves plaintiffs' right to claim: (1) discrimination in the FSWE beginning in 1991, and (2) any discrimination after December 31, 1994. Thus, the *Global Consent Decree*, "as its name indicates, represented an effort to settle all of [p]laintiffs' claims that had accrued as of December 31, 1994, with a few exceptions not relevant here." Memorandum Opinion, Mar. 26, 1999, at 2. Thus, while plaintiffs cannot suggest new theories of discrimination based on actions taken after 1994 in the context of this lawsuit, they certainly can seek to enforce the injunctions imposed by prior court orders in this case and by the GCD.[3]

Thus, as demonstrated in counsel's affidavit, plaintiffs need information regarding the 1996 Examination and all Examinations administered thereafter to determine whether: (1) any of them have had a discriminatory, adverse impact on women, and (2) if so, whether the job knowledge portion of the FSWEs was properly validated. The court appreciates defendant's argument that plaintiffs will not need validation evidence unless there is an adverse impact and prima facie evidence of discrimination. But, the court finds it more efficient to allow plaintiffs to seek this information via one round of discovery rather than two, especially because they have already asserted that the pass rates for the 1998 Examination reveal a discrepancy between male and female pass rates of more than 1.96 standard deviations.

Moreover, the court must address defendant's insistence that the 1989 Order enjoined defendant from administering a discriminatory FSWE "until a new, non-discriminatory

---

[3] On a related note, defendant argues that the 1989 Order and any injunction established therein are inapplicable to these proceedings. Specifically, defendant argues that the 1989 Order responded to plaintiffs' motion to enforce the 1983 Consent Decree and that the GCD expressly terminated the 1983 Consent Decree. However, nothing in the record vacates or supercedes the 1989 Order.

examination was designed and implemented." <u>Defendant's Opposition to Plaintiffs' Motion for Discovery Pursuant to Rule 56(f) and to Stay the Time for Responding to Defendant's Motion to Terminate the Requirements in the 1996 Global Consent Decree Regarding the Foreign Service Written Examination Until Discovery Is Complete</u> ("Def.'s Opp'n to Pls.' Mot.") at 3. Defendant goes on to state that it demonstrated, in the motion to terminate, "that a non-discriminatory examination was designed and implemented and plaintiffs do not contend otherwise." <u>Id.</u> Defendant seems to make this argument to convince the court that there is an implicit cut-off date for the injunctions against discrimination, but the court finds two problems with that argument.

First, in its 1989 Order, the court enjoined defendant from administering Examinations in such a manner that they had an adverse impact, defined as a discrepancy in male and female pass rates of 1.96 or more standard deviations. <u>Id.</u> at 4. It then authorized State to use a certain scoring methodology for the 1988 Examination. If the government intended to use a different methodology, State had to submit it for court approval "until a new, non-discriminatory examination is designed and implemented." <u>Id.</u> Thus, the language quoted by defendant refers to the period in which defendant had to submit its scoring methodology to the court and did not constitute a time limit for the court's injunction against discriminatory FSWEs.

Second, whether defendant has designed a non-discriminatory FSWE is the subject of defendant's motion to terminate, which focuses on the 1996 Examination. This issue is far from decided, and plaintiffs will respond to defendant's claims after an opportunity for discovery. In addition, even though defendant claims that it designed a new, non-discriminatory Examination in 1991 and there was no court finding that the 1991 FSWE was discriminatory, there was no

13

finding that the 1991 FSWE was *non*-discriminatory either. While the court denied plaintiffs' motion for summary judgment, the parties subsequently entered into a Consent Decree, and the issue was simply not determined. Thus, it is illogical to conclude that: (1) the injunctions ceased in 1996, or (2) the injunctions ceased in 1991.

Accordingly, this court finds that plaintiffs are entitled to the information they seek in their Rule 56(f) motion and in the discovery requests they have served on defendant. Defendant shall have 30 days from the date of the accompanying Order in which to respond to the outstanding discovery requests. In light of this ruling, defendant's motion for a protective order is denied, and defendant's motion to terminate is denied without prejudice to renew it once discovery is complete.

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: